STATE OF CONNECTICUT *v.* DENNIS HATHAWAY
(AC 22699)

Schaller, Dranginis and Flynn, Js.

Argued May 12—officially released August 5, 2003

*Kirstin B. Coffin*, special public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Donna Mambrino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Dennis Hathaway, appeals from the judgment of the trial court revoking his probation and imposing an eight year sentence of incarceration, execution suspended after five years, followed by five years probation. On appeal, the defendant

claims that the court (1) improperly found that he violated his probation when the state failed to prove a violation by a fair preponderance of the evidence and (2) abused its discretion in failing to disclose certain records in response to his motion for disclosure. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The defendant achieved his probation status due to a predicate felony, when on January 22, 1991, he pleaded guilty to sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2).[1] The defendant was sentenced to sixteen years incarceration, execution suspended after eight years, with five years of probation. The conditions of probation, among other things, required that the defendant refrain from violating any criminal law.

In March, 2000, after a period of incarceration and while the defendant was on probation, he first met the victim, J,[2] through her boyfriend. Over the next two months, they developed a casual relationship such that the defendant occasionally saw J alone. On the evening of June 24, 2000, while at J's home, the defendant started kissing J on the lips. J told him to stop. The defendant tossed J onto a chair, held both of her arms behind her shoulders, pulled down her shorts and put his tongue into her vagina. J again told the defendant to stop. The defendant initially ignored her protests, but eventually stopped and told her not to tell anyone. Several days

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] In accordance with our policy to protect the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be revealed. See General Statutes § 54-86e.

later, J told her boyfriend about the assault. Thereafter, J reported the incident to the police. The defendant was subsequently arrested and charged with sexual assault in the first degree, unlawful restraint in the second degree and violation of probation.

A probation revocation hearing ensued. The court found that the defendant had violated his probation and sentenced him to eight years incarceration, execution suspended after five years, with five years probation.[3] This appeal followed. Additional facts will be set forth where pertinent to the issues raised.

We note, at the outset, our standard of review for probation revocation hearings. "In a probation revocation proceeding, the state bears the burden of proving by a fair preponderance of the evidence that the defendant violated the terms of his probation. . . . This court may reverse the trial court's finding that a defendant violated the terms of his probation only if such finding is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling. . . . This court defers to the trial court's discretion in matters of determining credibility and the weight to be given to a witness' testimony. . . . Furthermore, [i]n making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence." (Internal quotation marks omitted.) *State* v. *Verdolini*, 76 Conn. App. 466, 468–69, 819 A.2d 901 (2003).

I

The defendant first claims that the court improperly found that he violated his probation by violating a crimi-

---

[3] The defendant was given credit for four and one-half years of probation already served for his previous sexual assault conviction.

nal law because the state failed to prove a violation by a fair preponderance of the evidence. Specifically, the defendant argues that the evidence proffered at the probation hearing was neither reliable nor probative. We disagree.

The record supports the court's conclusion that J's testimony was credible and that the defendant violated his probation. At the hearing, J testified that the defendant tried to kiss her and that she told him to stop. The defendant tossed her onto a chair, pulled down her shorts and put his tongue into her vagina. Moreover, the defendant's probation officer testified that the defendant was aware that one of the conditions of his probation was that he could not violate any criminal law. At the conclusion of the hearing, the court stated that this case "essentially comes down to a test of the credibility . . . of the two people who were involved in the incident . . . . Based on the testimony of the parties here, and the other testimony, and the other evidence as well, I'm going to make the finding . . . that the defendant violated his probation."

"As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Citations omitted.) *State* v. *Campbell*, 61 Conn. App. 99, 102, 762 A.2d 12 (2000), cert. denied, 255 Conn. 934, 767 A.2d 105 (2001). Accordingly, we conclude that the court's findings of facts were not clearly erroneous and that the court did not abuse its discretion in revoking the defendant's probation.

## II

The defendant next claims that the court improperly denied his motion for disclosure of J's psychiatric

records. Specifically, the defendant contends that the court erred in failing to disclose crucial records involving (1) J's credibility, which deprived him of his constitutional right to cross-examine J adequately, and (2) J's psychiatric treatment.[4] We are not persuaded by the defendant's claims.

The following facts are necessary to resolve those claims. Prior to trial, the defendant filed a motion for review and disclosure, petitioning the court to order the state to provide him with J's mental health records or to conduct an in camera examination of such records and to disclose any material that may be relevant in cross-examining her. The defendant's request was predicated on the arrest warrant application, which stated that J is learning disabled, mentally retarded and taking medication for depression. Thereafter, with J's permission, the court conducted an in camera review of the psychiatric records.

After an examination of the records from the Outpatient Behavioral Health Center and the Inter-Community Mental Health Group (Inter-Community), the court denied the defendant access to J's records because they did not contain information relevant to her testimonial capacity. The court ruled: "I found nothing in those records that would affect the credibility of the patient, nor did I find anything that would be exculpatory for the defendant. In sum, I found no relevant impeaching evidence that would be favorable to the defendant in those records."

At trial, J had difficulty testifying about the events of June 24, 2000. Specifically, she was unresponsive to

---

[4] The defendant also claims that the disclosure of portions of J's psychiatric records were released far too late in the proceedings and, therefore, affected the outcome of the trial. He raises that argument in his brief for the first time on appeal. Because the defendant failed to preserve the issue properly by raising it before the trial court, we decline to review the claim. See *State v. Moody*, 77 Conn. App. 197, 225, 822 A.2d 990, cert. denied, 264 Conn. 918, 827 A.2d 707 (2003).

many of the state's questions and had to refresh her recollection by reading the statement that she had given to the police. During J's examination, neither party elicited testimony from J about any medications she was taking or whether she was receiving treatment. The state, however, elicited testimony from Denise Fisher, a nurse at Manchester Memorial Hospital (hospital), about J's hospital visit following the sexual assault. On cross-examination, Fisher testified that J had reported that she had a prior history of depression and that she had been on the medication Zoloft. Fisher further testified that J reported that she had not taken any medication since April, 2000. Additionally, Fisher testified that J was hesitant to talk and that J answered questions slowly, which was consistent with depression, but was also common with sexual assault victims who had no mental illness or depression.

At the end of the defendant's case, the court conducted a second in camera review of J's mental health records because of her demeanor on the witness stand. The court subsequently released portions of J's mental health records, which may have contained either exculpatory evidence or provided evidence relating to J's credibility. Those records consisted of the police report, records from the hospital and psychiatric records from Inter-Community.

Thereafter, the state recalled J to the witness stand. J testified as to the following: She had been going to Inter-Community since 1996. In 1997, she reported that her boyfriend had hit her. Her boyfriend had neither sexually assaulted her nor hit her since 1997. J finally stated that she did not initially tell her boyfriend about her sexual encounter with the defendant because she feared that her boyfriend would confront the defendant. On cross-examination, J testified, however, that she did not tell her boyfriend about the sexual assault because he would hit her whenever he got angry and upset.

The defendant claims that all of J's psychiatric records were highly relevant to her reliability, credibility and sense of perception. Because those claims are similar, we will discuss them together.

"On appeal, this court has the responsibility of conducting its own in camera inspection of the sealed records to determine if the trial court abused its discretion in refusing to release those records to the defendant. . . . The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality . . . . Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis. . . . At this stage in the proceedings, when the court has reviewed the records in camera, access to the records must be left to the discretion of the court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records. . . . We review the trial court's decision under an abuse of discretion standard." (Citations omitted; internal quotation marks omitted.) State v. Walsh, 52 Conn. App. 708, 722–23, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999).

We have carefully reviewed J's psychiatric records that were not disclosed and conclude that further disclosure of those records was unwarranted because they did not contain additional information that was especially probative of J's capacity to relate the truth, recollect and narrate relevant events. We therefore conclude that the court did not abuse its discretion by denying the defendant's request for access to certain portions of J's confidential records.

The judgment is affirmed.

In this opinion the other judges concurred.