ROBERT C. BERRY *v.* PAMELA S. BERRY
(AC 25135)

Lavery, C. J., and Schaller and Dranginis, Js.

Argued February 8—officially released April 26, 2005

*Steven H. Levy*, for the appellant (defendant).

*M. Katherine Webster-O'Keefe*, for the appellee (plaintiff).

Opinion

LAVERY, C. J. The defendant, Pamela S. Berry, appeals from the trial court's judgment denying her motions for modification of alimony and for attorney's fees. On appeal, she claims that the court (1) relied on outdated case law, (2) made erroneous factual findings, (3) improperly concluded that her changed circumstances did not warrant an upward modification in her alimony award and (4) improperly denied her motion for attorney's fees. We affirm the judgment of the trial court.

This case arises from the dissolution of the parties' twenty-one year marriage on January 5, 1998. As part of the court's judgment, the plaintiff, Robert C. Berry, was ordered to pay the defendant $1 per year alimony for a nonmodifiable term of ten years. On December 11, 2002, the defendant filed a motion for an upward modification of her alimony on the basis of a substantial change in her circumstances, consisting of her diagnosis of leukemia in October, 2002, and loss of employment on December 31, 2002. She also filed a motion for attorney's fees. In response, the plaintiff filed motions seeking to terminate his alimony obligation on the basis of changed circumstances and for attorney's fees. The court heard argument and testimony and, on January 28, 2004, denied all of the motions.[1] On February 19, 2004, the defendant filed this appeal. On April 19, 2004,

---

[1] This appeal addresses only the denial of the defendant's motions. The court's rulings on the plaintiff's motions are not a subject of this appeal.

the court issued an articulation[2] of its rulings in which it stated that both parties had a substantial change in circumstances, but that those changes did not warrant a modification of the alimony order.

## I

The defendant first claims that the court improperly relied on outdated case law requiring an uncontemplated change in circumstances in order to modify the alimony award. She argues that the judgment should be reversed because the court used the wrong legal standard. We disagree.

We first set forth our well established standard of review that is applied in domestic relations matters. "A trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases, and its orders in such cases will not be reversed unless its findings have no reasonable basis in fact or it has abused its discretion, or unless, in the exercise of such discretion, it applies the wrong standard of law." *Crowley* v. *Crowley*, 46 Conn. App. 87, 90, 699 A.2d 1029 (1997).

Modification of an alimony award is controlled by General Statutes § 46b-86 (a), which provides in relevant part: "Unless and to the extent that the decree precludes modification . . . any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . . By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in

---

[2] The court titled the document "Rearticulation," but it was the court's first and only articulation in this case.

the written agreement, stipulation or decision of the court. . . . No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to [General Statutes §] 52-50."

In its articulation, the court referenced *LaBow* v. *LaBow*, 13 Conn. App. 330, 344–45, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988), and *Kelepecz* v. *Kelepecz*, 187 Conn. 537, 538, 447 A.2d 8 (1982), for the proposition that an alimony modification required an uncontemplated change in circumstances. The defendant is correct that this was an improper standard. Public Acts 1987, No. 87-104, eliminated the requirement in § 46b-86 that modification of alimony or support be based on uncontemplated changes of circumstances. *Darak* v. *Darak*, 210 Conn. 462, 470, 556 A.2d 145 (1989).

Nevertheless, we conclude that this was harmless error by the court. The defendant is entitled to relief from the court's improper rulings only if one or more of those rulings were harmful. *DiBerardino* v. *DiBerardino*, 213 Conn. 373, 385, 568 A.2d 431 (1990). In this case, the court did not find that the defendant's change in circumstances was uncontemplated. In fact, the court never stated whether it found the change to be contemplated or not. Instead, its analysis illustrates that the proper standard of law was used. The court evaluated the facts of the case, as it is required to, in compliance with General Statutes § 46b-86. The defendant has failed to show harm from the improper citation in the court's articulation.

## II

The defendant next claims that the court made erroneous factual findings. She maintains that the court

improperly found that (1) her medical condition was in remission, (2) her employment situation would improve in the near future and (3) she was cohabitating with an individual with whom she equally shares living expenses. We disagree.

"As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Hathaway*, 78 Conn. App. 527, 531, 827 A.2d 780, cert. denied, 266 Conn. 909, 832 A.2d 73 (2003). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Lipshie* v. *George M. Taylor & Son, Inc.*, 265 Conn. 173, 182, 828 A.2d 110 (2003).

A

The defendant maintains that the court made an unsupported factual finding that her leukemia was in remission. The defendant argues that she testified that she did not know if she was in remission, that a bone marrow biopsy was the only way her physician could determine if she was in remission and that this test would likely occur in the near future. We disagree that the court's finding was erroneous.

In its articulation, the court did state that the defendant's leukemia was then in remission. The court later elaborated on its finding by stating that although the defendant's *"leukemia has been treated and she appears to be in remission, reoccurrence is possible*

*although the prospects of remission are speculative.
. . .* Even if she is not in remission, she has ample resources to support herself in the style to which she became accustomed during the marriage without supplementation from [the plaintiff] at the present time." (Citation omitted; emphasis added.) The evidence supported that finding. The defendant testified that she thought she was in remission. Moreover, there were two exhibits submitted, consisting of letters from the defendant's treating physician, stating that she had been treated with an autologous bone marrow transplant, which the physician hoped would cure her leukemia, but that she faced a risk of recurrence of the disease. The court's finding was not inconsistent with that evidence.

### B

The defendant next claims that the court made improper findings regarding her future employment situation. She specifically takes issue with the court's findings that she would be employed gainfully in the near future, that her former employer was hiring and that she expected to be able to resume highly gainful employment. We disagree that those findings are clearly erroneous.

The court specifically found that the defendant "may resume her employment soon. . . . It is possible that she could return to work in 2004. . . . Her former employer is hiring, and she was called and asked to go in and discuss a job." (Citations omitted.) The defendant testified that it was possible that she could return to work in the coming months and that she may have another job by the time her temporary insurance coverage expired in the summer of 2004. The court found that she *might* resume employment and that it was *possible* that this could occur in 2004. Those qualifiers

make the court's findings consistent with the testimony given by the defendant.

Additionally, the defendant testified that she had received a telephone call from her former employer asking her to discuss another position with the company. Thus, it was clear that the company was hiring. The defendant also testified that she had heard that the company was hiring at the current time. The defendant argues that this testimony was used improperly because it was based on a prior question regarding her knowledge of a newspaper article, which was stricken as hearsay. We believe that the court properly relied on her testimony. During the discussion regarding the newspaper article, the defendant stated that she did not have knowledge of the article. She then was asked if she was aware that the company was hiring for 700 new jobs. She responded that she had heard about that information. Because the defendant had not been aware of the article, her information regarding the hiring must have come from another source. No objection to that question was raised, and the court was free to rely on the testimony. Thus, the court's finding was not clearly erroneous regarding the defendant's future employment.

C

The defendant also takes issue with the court's factual finding that she was cohabitating with another person with whom she shared expenses equally and its conclusion that this fact was relevant to an analysis under § 46b-86 (a). The court found that "[s]ince March, 2001, she has cohabitated with Mr. Guy Gignac. . . . She and Mr. Gignac share equally living and leisure expenses, and he performs customary home maintenance chores for which [the defendant] does not have to pay." (Citation omitted.) The court also found that "[i]n light of the fact that [the defendant] and Mr. Gignac

split all other joint expenses equally, the court finds incredulous [the defendant's] claims that Mr. Gignac does not contribute financially to the household and that she is supporting Mr. Gignac, especially since he was employed and she was ill and unemployed." We conclude that those findings are supported by the evidence and are not clearly erroneous.

The court properly found that the defendant was cohabitating with Gignac. The defendant testified that she and Gignac had lived together from March, 2001, until August 10, 2003, at which time Gignac moved out of the residence. That was a mere two days after the plaintiff filed a motion to terminate alimony because of the cohabitation. She also admitted that Gignac continued to spend nights at her house. The plaintiff testified that he had witnessed Gignac's vehicle frequently parked at the defendant's house in the early morning. The court did not believe the defendant's testimony that she was not cohabitating, and we defer to the court's credibility assessment. See *State* v. *Hathaway*, supra, 78 Conn. App. 531.

The court also found that the defendant and Gignac shared living expenses equally. The defendant testified that she and Gignac equally shared expenses for groceries, meals and vacations. She also testified that she paid for utilities at her Roxbury residence but that Gignac performed maintenance at the house. Gignac paid the majority of the utilities and expenses of a vacation home the couple purchased the previous year and for which they are tenants in common. That evidence supports the court's reasonable inference that Gignac contributed financially to the household and that the plaintiff and Gignac shared expenses equally. We will not disturb the court's finding.

The defendant contends that the court's use of that factual finding illustrates an improper reliance on § 46b-

86 (b), which provides: "In an action for divorce, disso-
lution of marriage, legal separation or annulment
brought by a husband or wife, in which a final judgment
has been entered providing for the payment of periodic
alimony by one party to the other, the Superior Court
may, in its discretion and upon notice and hearing,
modify such judgment and suspend, reduce or termi-
nate the payment of periodic alimony upon a showing
that the party receiving the periodic alimony is living
with another person under circumstances which the
court finds should result in the modification, suspen-
sion, reduction or termination of alimony because the
living arrangements cause such a change of circum-
stances as to alter the financial needs of that party." We
agree with the plaintiff that the defendant's reference to
the cohabitation statute is misplaced. The court did not
modify the alimony award because of cohabitation. In
fact, it denied the plaintiff's motion to terminate ali-
mony on the basis of cohabitation. Instead, the court's
ruling was made in accordance with § 46b-86 (a), which
requires the analysis of the same factors as those
described in General Statutes § 46b-82.[3] Those factors
include "the length of the marriage, the causes for the
annulment, dissolution of the marriage or legal separa-
tion, the age, health, station, occupation, *amount and
sources of income* [and] vocational skills . . . ."
(Emphasis added.) General Statutes § 46b-82. The court
properly considered the defendant's cohabitation in
relation to her financial situation.

### III

The defendant maintains that the court improperly
determined that her circumstances did not warrant a
modification of her alimony award. We disagree.

---

[3] "Once a trial court determines that there has been a substantial change
in the financial circumstances of one of the parties, the same criteria that
determine an initial award of alimony . . . are relevant to the question of
modification." (Internal quotation marks omitted.) *Borkowski* v. *Borkowski*,
228 Conn. 729, 737, 638 A.2d 1060 (1994).

"We review the trial court's ruling on a motion to modify, mindful that [a] trial court is endowed with broad discretion in domestic relations cases. Our review of such decisions is confined to two questions: (1) whether the court correctly applied the law, and (2) whether it could reasonably have concluded as it did." (Internal quotation marks omitted.) *Gorton* v. *Gorton*, 80 Conn. App. 52, 54, 832 A.2d 675 (2003).

In considering the defendant's motion, the court first had to determine whether the defendant had a change in circumstances and then use the same factors used in the original award of alimony to determine whether her circumstances warranted a modification of the alimony. See *Hardisty* v. *Hardisty*, 183 Conn. 253, 258–59, 439 A.2d 307 (1981); see also General Statutes § 46b-86 (a). The court clearly found that the defendant had a change in circumstances caused by illness and her loss of employment. Therefore, our review will center on the court's determination that the defendant's changed circumstances did not warrant a modification of the alimony award.

As correctly noted by the court, illness alone does not warrant an alimony modification. The moving party must also "show that she is unable to meet her medical expenses and that the payor is amply able to pay the increased alimony."[4] *McGuinness* v. *McGuinness*, 185

---

[4] The defendant also argues that the court improperly determined that the plaintiff's increase in income was not a substantial change of circumstances to warrant a modification of his alimony obligation. We think that argument is misplaced. The court found that the plaintiff does have sufficient increased income and could afford to pay more alimony. The court used that finding in denying the plaintiff's motion to terminate alimony on the basis of the defendant's cohabitation and his alleged financial hardship. The defendant's motion to modify was based on her illness and loss of employment, and not on the plaintiff's change in income. The defendant did not prove to the court that she could not pay her medical expenses or that she had a financial hardship. Therefore, the plaintiff's ability to pay additional alimony is inconsequential.

Conn. 7, 11, 440 A.2d 804 (1981); see also *Wanatowicz* v. *Wanatowicz*, 12 Conn. App. 616, 619, 533 A.2d 239 (1987). Additionally, loss of employment does not warrant alimony modification unless the moving party also proves that her earning capacity has changed substantially. See *Logan* v. *Logan*, 13 Conn. App. 298, 299–300, 535 A.2d 1332 (1988). Although the defendant established a substantial change in circumstances, she was not able to prove that she could not pay her medical expenses or that she would not be able to be employed within a reasonable time and did not have adequate financial resources to sustain her through the interim.

The defendant argues that the court should not have considered her retirement account and other savings and assets, but only her income, in determining whether the alimony award should be modified. That contrasts with our holding in *Gay* v. *Gay*, 70 Conn. App. 772, 800 A.2d 1231 (2002), aff'd in part, 266 Conn. 641, 835 A.2d 1 (2003), in which we held that "[a] conclusion that there has been a substantial change in financial circumstances justifying a modification of alimony based only on income is erroneous; rather, the present overall circumstances of the parties must be compared with the circumstances existing at the time of the original award to determine if there has been substantial change." (Internal quotation marks omitted.) Id., 781, quoting 24A Am. Jur. 2d, Divorce and Separation § 826 (1998). The court in this case looked at both parties' entire financial situations, although it stated that it did not take into consideration the appreciation of assets granted to the defendant in the dissolution decree. We find no fault with the factors used by the court.

The defendant also contends that the court did not afford sufficient weight to medical reports written by her physician when deciding whether a modification was necessary. We disagree. After a review of the exhibits and the court's decision, we conclude that the court

did not abuse its discretion in the weight it gave that evidence. In fact, the court considered a variety of factors before making its decision, including the needs and financial resources of each of the parties, taking into consideration their age, health, station, occupation, employability, and the amount and sources of income and the cause of the divorce. Additionally, the court made the following factual findings that we find relevant to our review: (1) that the defendant received and still retains substantial financial resources in addition to those awarded to her in the divorce and gained through the appreciation of those assets; (2) she not only saved her severance payment, but her savings and retirement account balances have increased markedly since her divorce; (3) she has more than $1 million in assets; (4) she no longer has a mortgage on her primary residence; (4) she was cohabitating with a gainfully employed individual; and (5) she lacked credibility in that she mischaracterized her assets, and her claim of financial need was unpersuasive in light of her financial resources. In light of those findings and the circumstances of this case, we conclude that the court did not abuse its discretion by denying the defendant's motion to modify her alimony award.

## IV

Last, the defendant claims that the court improperly denied her attorney's fees. We disagree.

General Statutes § 46b-62 governs the award of counsel fees in dissolution proceedings. It provides in relevant part that "the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ." "Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other

orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . Whether to allow counsel fees and in what amount calls for the exercise of judicial discretion. . . . An abuse of discretion in granting the counsel fees will be found only if this court determines that the trial court could not reasonably have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Cordone* v. *Cordone*, 51 Conn. App. 530, 537, 752 A.2d 1082 (1999).

In denying both parties' motions for attorney's fees, the court stated: "Given [the defendant's] substantial liquidity and [the plaintiff's] substantial income, as well as the prior orders which created economic parity [between] the parties, the court orders each party to pay [his and her] own legal fees." The record does not support a finding that the defendant lacked sufficient liquid assets with which to pay her counsel fees or that the failure to award her such fees would have undermined the court's other financial orders.

The judgment is affirmed.

In this opinion the other judges concurred.