SHARON R. RACSKO *v.* RICHARD RACSKO
(AC 24781)

McLachlan, Gruendel and Harper, Js.

Argued April 26—officially released September 13, 2005

*Sharon R. Racsko*, pro se, the appellant (plaintiff).

*William R. Donaldson*, filed a brief for the appellee (defendant).

*Thomas P. Pettinicchi*, guardian ad litem, filed a brief for the minor children.

*Opinion*

McLACHLAN, J. The plaintiff, Sharon R. Racsko, appeals from the judgment of the trial court dissolving the parties' marriage and issuing various orders. She claims that the court improperly (1) ordered that the passports of the parties' two minor children be surrendered to the guardian ad litem and that the defendant, Richard Racsko, have the sole authority to make determinations regarding the children's international travel, (2) denied the plaintiff's request to relocate with the children to Tennessee, (3) failed to enter orders regard-

ing payment of the children's college expenses, (4) ordered that the defendant be permitted to claim the children as an income tax deduction and (5) failed to order the defendant to pay her attorney's fees. We affirm the judgment of the trial court.

The parties were married in April, 1989, in Jacksonville, Florida. At that time, the plaintiff had received a medical discharge from the United States Navy for a degenerative problem with her right foot. Upon discharge, the plaintiff attended college and eventually graduated from the University of Florida in December, 1990, with a bachelor's degree in clinical psychology. She subsequently attended Southern Connecticut State University where she earned a master's degree in school psychology. The plaintiff is licensed as a school psychologist in both Connecticut and Tennessee and, at the time of trial, was employed two and one-half days per week as a school psychologist in Connecticut until that position ended in June, 2003, at the end of the school year.

The defendant also served in the Navy and, after completing his tour, attended college and earned a bachelor of science degree in air transportation management. He subsequently reenlisted in the Navy and, at the time of the parties' marriage, was working as a nuclear delivery pilot. The defendant had intended to make a career in the Navy, but those plans were derailed after an incident of domestic violence for which he was arrested for spousal battery and the plaintiff was arrested for illegally discharging a firearm. After receiving several unsatisfactory reports from superior officers, he refocused his energies on becoming a commercial airline pilot. In 1991, he began working as a commercial pilot for American Airlines, and, in 1992, the couple relocated to Connecticut. The parties eventually had two children together, one born November 7, 1995, and the other born August 24, 1997.

By all accounts, the parties' marriage was tumultuous. The plaintiff and the defendant argued frequently, their fights often escalating to violent physical altercations. Despite having attended several counseling sessions to satisfy a court order related to the arrests for spousal battery and discharging a firearm, the pattern of domestic violence continued. The police were called on at least eight occasions and issued both verbal and written warnings to the parties. On at least one occasion, both the plaintiff and the defendant were arrested.

After the plaintiff initiated divorce proceedings in March, 2000, the relationship became even more acrimonious. The defendant refused to communicate with the plaintiff, either refusing her calls or hanging up the telephone and returning her letters unopened. The only way the plaintiff could communicate with the defendant about the children was through the parties' attorneys. The defendant also refused to pay for any activities for the children and refused to take them to scheduled activities, including preschool and medical appointments, during "his" parenting time.

Trial on the matter took place over three days in June, 2003. The court heard testimony from the plaintiff, the defendant, two family relations counselors and a psychologist. In August, 2003, the court dissolved the parties' marriage and issued various financial, custody and visitation orders. The plaintiff now appeals, challenging several of the orders, each of which is discussed in turn.

Before addressing each claim, we set forth the standard of review that governs the review of orders in domestic relations cases. "We will generally not disturb an order unless the court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . In determining whether there has been an abuse of discretion, the unquestioned rule is that great weight

is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . [W]e do not review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . Further, we must accept the factual findings of the court unless they are clearly erroneous in light of the evidence presented in the record as a whole." (Citations omitted; internal quotation marks omitted.) *Syragakis* v. *Syragakis*, 79 Conn. App. 170, 173, 829 A.2d 885 (2003).

I

The plaintiff first claims that the court improperly directed her to surrender the children's passports to the guardian ad litem and ordered that the defendant have the sole authority to make determinations regarding the children's international travel. We disagree.

In its memorandum of decision, the court ordered: "To the extent the [plaintiff] is in possession of any passport of or for the benefit of the children, she shall immediately surrender same to the guardian ad litem. . . . [The defendant] shall have the sole responsibility of ascertaining the conditions [pertaining to whether] the children shall travel outside the United States. The [plaintiff] shall make no attempt to secure a passport for either of the minor children, nor shall she make any attempt to travel with the minor children on her passport. . . . Under no circumstances shall the minor children be permitted to travel with the [plaintiff] to a country that has not ratified the Hague Convention or is on the list of countries for which the United States has not accepted accessions."

The plaintiff argues that the court abused its discretion by "minimizing the custodial parent's desire to travel abroad . . . for cultural pursuits, religious pursuits and vocational pursuits as a part-time ambassador-missionary of good will to children in other countries.

. . . [This] undermining of the legal custodial parent's right to make travel decisions which afford culturally enriching travel with said minor children with exposure to other languages, etc., is unconstitutional . . . ." The plaintiff maintains specifically that restricting her ability to travel with the children outside the country at her whim violates her right to international travel and the free exercise clause of the first amendment to the United States constitution.

"The Free Exercise Clause of the First Amendment, which has been applied to the states through the Fourteenth Amendment, provides that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." (Internal quotation marks omitted.) *Fifth Avenue Presbyterian Church* v. *City of New York*, 293 F.3d 570, 574 (2d Cir. 2002). The right to international travel has been recognized by the United States Supreme Court as a constitutional right, but one which is accorded less deference than the right of interstate travel. See *In re Grand Jury Subpoena of Flanagan*, 691 F.2d 116, 124 (2d Cir. 1982).[1]

The orders at issue in no way implicate either the free exercise clause or the plaintiff's right to international travel. The orders do not prohibit or even limit the plaintiff's ability to travel or to exercise her religion; they simply impose restrictions on her ability to determine unilaterally the conditions under which her children can travel internationally.

We further conclude that the orders at issue are amply supported by the record. The court found, and the

---

[1] "The constitutional right of interstate travel is virtually unqualified, *United States* v. *Guest*, 383 U.S. 745, 757–58 [86 S. Ct. 1170, 16 L. Ed. 2d 239] (1966) . . . . By contrast the right of international travel has been considered to be no more than an aspect of the liberty protected by the Due Process Clause of the Fifth Amendment. As such this right, the Court has held, can be regulated within the bounds of due process." (Citation omitted; internal quotation marks omitted.) *Califano* v. *Aznavorian*, 439 U.S. 170, 176, 99 S. Ct. 471, 58 L. Ed. 2d 435 (1978).

record supports, that the plaintiff had demonstrated lapses in her ability to make choices in the children's best interests. Those lapses were particularly acute when it came to the plaintiff's desire to travel to Israel. During the course of the dissolution proceedings, the plaintiff articulated a desire to travel to and to relocate to Israel with the children. The plaintiff testified at length about her intention to do missionary work throughout Israel and that she wanted her children to go with her so that they could experience a different culture and gain an appreciation of the importance of doing what one can to make the world a better place. The plaintiff seemed unconcerned, or at the very least ill informed, about a variety of safety concerns for herself and her children in Israel, including frequent terrorist attacks.

Wendy Habelow, a psychologist who conducted a psychological examination of the plaintiff, concluded that the plaintiff may be experiencing significant stress in her life as a result of the divorce and that her judgment might be compromised as a result.[2] The court noted in particular in its memorandum of decision that Habelow was concerned that the plaintiff was unable to recognize that her children's needs may differ from her own and that this inability to evaluate her decisions fully, including recognizing negative aspects of certain choices, could pose a danger to her children's well-being.

The testimony of both Habelow and the plaintiff provides a reasonable factual basis for the orders at issue. There was an adequate factual basis for the court to be concerned that the plaintiff might decide unilaterally to take the children out of the country and that such

---

[2] Although Habelow's testimony and report focused principally on the plaintiff's desire to relocate to Israel, her concerns are applicable with equal force to a discussion of the international travel orders as they pertained to the plaintiff's general state of mind and decision-making ability.

a determination might not be in the children's best interests. We accordingly conclude that the court's orders are supported by the record and did not amount to an abuse of discretion.

## II

The plaintiff next claims that the court improperly denied her request to relocate with the children to Tennessee. We disagree.

The court concluded: "The court finds that it is not in the best interest of the minor children to relocate to Israel or Tennessee." The plaintiff contends that the best interests of the children would have been served by relocation to Tennessee because it would shelter them from the parties' contentious relationship.

During the first family relations evaluation, and on various occasions until January, 2003, the plaintiff indicated a desire to relocate with the children to Tennessee, where her family lived and where the children had spent considerable time during the summer and on holidays. Then, in January, 2003, the plaintiff abruptly changed her mind and decided she wanted to relocate to Israel. That sudden decision was apparently the result of a ten day trip to Israel that the plaintiff took in December, 2002. Explaining her desire to relocate there, the plaintiff testified: "I saw a lot of need there in the education system. . . . I want to go in there and work in the educational system and work with those children. . . . I'd like to teach English. . . . And I just feel that it has always been part of my—I don't know how to say this—my personal goals. And I feel it has a lot to offer me professionally. I want to get a Ph.D. They do have a Hebrew university. . . . I'm very interested in political science and peace and children and what I can do to help contribute." When asked about how the move might affect her children, the plaintiff responded, "I think that my children, because of the

training they have in Sunday school, they're very open to that. I really haven't discussed it with them. I mean, I think they'll do fine." The plaintiff then went on to discuss how moving to Israel would afford the children exposure to cultural diversity, make a contribution to the world and broaden their perspectives.

After questioning by both counsel and the court about her original request to relocate to Tennessee with the children, the plaintiff responded, "Well, obviously, I would want to be around my family. I would petition the court to move to Tennessee, as I had originally asked."

In the course of her psychological evaluation, the plaintiff made statements to Habelow that she wanted to get away from the defendant and strife from the divorce proceedings. She later admitted on cross-examination that she had stated that she needed to get half-way across the world in order to get away from the defendant. Also, as noted previously, Habelow had concerns that the plaintiff's decision-making ability may be comprised by the significant stress she was experiencing.

After reviewing the record, we conclude that the court's order was soundly based on the evidence and testimony adduced during trial. The court appeared to have significant concerns about the plaintiff's sudden change of heart, from wanting to relocate to Tennessee originally and then to Israel, and her self-interested motives for moving.

The court also appeared to credit Habelow's report and testimony regarding the plaintiff's emotional state, its impact on her decision-making process and her inability to recognize that her children's needs may differ from her own. On the basis of the plaintiff's own statements about her desire to relocate, it was reasonable for the court to be concerned that although relocation may help the plaintiff attain some level of

tranquility, such a move might not necessarily be in the best interests of her children.

The court also considered the testimony of the guardian ad litem, Thomas P. Pettinicchi. Pettinicchi did not recommend relocation either to Israel or to Tennessee because he believed it important for both parents to share weekend and weekday time with the children and that relocation would prohibit the defendant from fully participating in the children's school and extracurricular activities on a regular basis. He explained that the children seemed bonded with both parents and needed consistent contact with both of them.

The plaintiff accurately points out that neither of the family relations counselors who had worked with the family testified that a move to Tennessee would be harmful to the children. We note, however, that our role on review is not to review the evidence to determine whether a conclusion different from the one reached could have been reached. Rather, our role is to determine whether there was a reasonable basis in the record to support the determination made. See *Syragakis* v. *Syragakis*, supra, 79 Conn. App. 173.

We accordingly conclude that the court did not abuse its discretion in ordering that the plaintiff not relocate with the children to Tennessee. That order was supported by testimony and evidence adduced at trial, and, in accordance with the deferential standard by which we review domestic relations orders, we will not disturb it.

### III

The plaintiff next claims that the court improperly failed to enter orders regarding payment of the children's college expenses. We disagree.

As to educational support, the court entered the following order: "The court shall reserve jurisdiction as

to how the children's college expenses shall be paid. Custodial accounts maintained by the parties shall be applied to each child's college expenses." The plaintiff argues that the defendant should be ordered to make a lump sum payment toward college expenses.

Although the statutory scheme regarding financial orders appurtenant to dissolution proceedings prohibits the retention of jurisdiction over orders regarding lump sum alimony or the division of the marital estate; General Statutes § 46b-81; courts are permitted to retain jurisdiction over educational support orders. General Statutes § 46b-56c.

In light of the ages of the children, who were five and seven at the time of the dissolution, it was reasonable for the court to retain jurisdiction over the issue of their college expenses to determine at a later time the responsibility of each party with respect thereto. We accordingly conclude that the order did not amount to an abuse of discretion.

IV

The plaintiff next claims that the court improperly allocated income tax dependency exemptions. We disagree.

In its memorandum of decision, the court stated: "Until the [plaintiff] has earnings in excess of $45,000 per year, the [defendant] shall claim both children as dependents for both state and federal taxes provided he is current on all support for the tax year on December 31 of each year. If the [plaintiff] earns in excess of $45,000 per year, she shall claim [the younger of the two children] for tax dependency purposes for both state and federal taxes. The [parties] shall exchange W-2 forms, 1099 forms and copies of their federal and state income tax returns on May 15 each year." The plaintiff maintains that the court's order in that regard

was "very biased" because she was awarded sole legal and physical custody of the children, and not "justly afforded the 'legal' benefits of said status or responsibility."

"It is clear that the trial court has the authority to allocate the income tax exemption and that doing so is a reasonable exercise of the court's wide discretion and broad equitable power." *Battersby* v. *Battersby*, 218 Conn. 467, 472 n.9, 590 A.2d 427 (1991).

In her brief, the plaintiff makes various assertions about both her own and the defendant's financial situations. She maintains that "the defendant has ample tax benefits within the framework of his position as an airline pilot, with the many tax benefits of a large corporation carved out by a power pilot's union" and that she "has been unable to secure employment [commensurate] with her formal education due to the timing of the trial court decision." The plaintiff then requests that this court reverse the trial court's order and order that she be given the tax deductions for the children. She states in closing: "The defendant may utilize his many fail-safe tax sheltering avenues offered by his employer, as well as all alimony deductions. The defendant has been afforded the children as a tax write off since their birth six and eight years [ago], and I would like to be afforded equity in years as well . . . ."

The plaintiff has offered no supporting evidence and cited no legal authority to bolster her assertions. In the absence of such support, there is no basis to conclude that the court abused its discretion when assigning the dependency exemptions to the defendant, and we decline to disturb the court's order.[3]

---

[3] In reaching that conclusion, we are mindful of the plaintiff's pro se status. "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . Nonetheless, [a]lthough we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with

V

The plaintiff next claims that the court improperly failed to order the defendant to pay her attorney's fees. We disagree.

In its memorandum of decision, the court stated: "Each party shall be responsible for the payment of their own legal fees." The plaintiff argues that the defendant should be ordered to pay a minimum of one half of her attorney's fees and all of her credit card debt.

General Statutes § 46b-62 governs the award of counsel fees in dissolution proceedings. It provides in relevant part that "the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ." "Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . Whether to allow counsel fees and in what amount calls for the exercise of judicial discretion. . . . An abuse of discretion in granting the counsel fees will be found only if this court determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Berry* v. *Berry*, 88 Conn. App. 674, 686–87, 870 A.2d 1161 (2005).

The record does not support a finding that the plaintiff lacked sufficient liquid assets with which to pay her counsel fees or that the failure to award her such fees would have undermined the court's other financial orders. The court awarded the plaintiff the marital home, with an appraised value of $426,000 and equity

relevant rules of procedural and substantive law." (Citation omitted; internal quotation marks omitted.) *New Haven* v. *Bonner*, 272 Conn. 489, 497–98, 863 A.2d 680 (2005).

328

of $250,908, as well as alimony in the amount of $300 per week. The court also awarded her $100,000 from the defendant's American Airlines pension. On the basis of those other financial orders, we conclude that the court did not abuse its discretion in ordering that she pay her own legal expenses.

The judgment is affirmed.

In this opinion the other judges concurred.