******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PRESCOTT, J., dissenting. For at least two reasons, I disagree with the majority's conclusion that the judgment of the trial court in this case must be reversed due to the court's application of the wrong legal standard in deciding whether to terminate the alimony obligation of the plaintiff, Robert R. Murphy. First, the majority's decision conflicts with, and implicitly overturns, prior decisions of this court. Second, the legal standard that the majority opinion announces is contrary to the legislative intent expressed in General Statutes § 46b-86 (b). In my view, the majority opinion fashions a new and significantly lower standard of proof in cases in which a party seeks to modify or terminate an alimony obligation because the recipient of the alimony is now living with another person.

This simply is not a case in which the trial court applied the wrong legal standard but, instead, is a case, like many others, in which the moving party did not meet his burden of persuasion with respect to the critical facts he needed to demonstrate in order to be entitled to relief. Accordingly, I respectfully dissent.

The following facts and procedural history are relevant to this appeal. The parties were divorced on March 12, 2012. The parties have one minor child that is an issue of the marriage, and the defendant, Jamie D. Murphy, also has a child who was born prior to the marriage and who subsequently was adopted by the plaintiff.

The court rendered a judgment of marital dissolution in accordance with the parties' separation agreement. Paragraph 12 of the separation agreement provides that the plaintiff would pay periodic alimony to the defendant in the amount of $400 per month until July, 2016, nonmodifiable as to amount and duration. It further provides that the obligation to pay alimony terminates on the earlier of the (a) death of the plaintiff, (b) death of the defendant, (c) remarriage of the defendant, or (d) cohabitation by the defendant as defined by § 46b-86 (b). On August 27, 2013, the parties agreed that the plaintiff's alimony obligation should be reduced to $320 per month. This modification later was approved by the court, *Olear, J.*

After the divorce, the defendant began renting a condominium on Sunfield Drive in South Windsor. In December, 2014, the defendant moved into her boyfriend's residence in Bloomfield. The defendant paid her boyfriend approximately $800 per month for rent and other housing expenses. She continued to pay all of her personal expenses and the expenses she incurred for the parties' children.

Upon learning that the defendant had moved into her boyfriend's residence in Bloomfield, the plaintiff filed

a number of motions, including the amended postjudgment motion seeking termination of his obligation to pay alimony. In that motion, the plaintiff alleged that the defendant had moved to Bloomfield where she was living with her boyfriend and that the new living arrangement caused such a change in circumstances as to alter her financial needs. The plaintiff therefore asked the court to terminate his alimony obligation pursuant to paragraph 12 (d) of the parties' separation agreement.

On April 21, 2015, the parties entered into a stipulation that was accepted by the court. The stipulation provided, in relevant part, that "[i]f [the defendant] [did] not return to South Windsor on or before August 15, 2015, then the issue of cohabitation and [the plaintiff's] claim to modify/terminate alimony [would] be addressed in mid-September, 2015. Further, if [the defendant] cohabitate[d] in South Windsor the issue of cohabitation [would] also be addressed in mid-September, 2015."

The plaintiff's counsel further represented to the court that "[i]f [the defendant] resumes living in South Windsor and leaves the residence where we're claiming that she's residing with her significant other, then the issue of cohabitation . . . [is] not a major issue and will likely be done with. If [the defendant] returns with her significant other to South Windsor, or if she does not return to South Windsor and stays in Bloomfield with her significant other, we're going to come back in mid-September and deal with cohabitation."

On August 14, 2015, as a result of the parties' stipulation, the defendant executed a lease to rent a residence in South Windsor. Although the defendant's boyfriend cosigned the lease, it provided that only the defendant and the parties' two children would occupy the rental residence. The defendant moved into that residence on October 1, 2015.

At the plaintiff's request, the court subsequently scheduled a hearing on the plaintiff's amended postjudgment motion seeking termination of his alimony obligation. The hearing took place over two days in January and February, 2016, during which the court, *Bozzuto, J.*, Chief Administrative Judge for Family Matters, heard testimony and admitted into evidence various exhibits.

Following the hearing, the court, in a written memorandum of decision, denied the plaintiff's motion. In its decision, the court recognized that the cost of the defendant's rent and utilities decreased when she was living with her boyfriend but reasoned that such a decrease "does not in and of itself lead to the conclusion that the boyfriend [was] contributing to the defendant's expenses."

Indeed, the court found that "[t]here was no reliable

or persuasive evidence that the defendant's boyfriend paid any of her other personal or housing expenses." The court concluded that there was insufficient evidence to draw the inference that, in light of the new living arrangements, the boyfriend contributes financial support to the defendant so as to alter her financial needs. The plaintiff did not offer any credible evidence regarding whether the defendant's boyfriend gave her money for clothing, food, household items, or anything else while she lived at the boyfriend's residence. Nor did the plaintiff offer any credible evidence "as to the monthly cost of the [Bloomfield] home or an indication of what percentage of the overall cost of the housing the defendant's $800 contribution covered." The court reasoned that, standing alone, the fact that the cost of the defendant's rent and utilities decreased while she lived in Bloomfield with her boyfriend did not suffice to show that her boyfriend contributed to her expenses such that the living arrangements altered her financial needs. In sum, the court concluded that the plaintiff failed to meet his burden to persuade it that living with her boyfriend in Bloomfield caused such a change of circumstances as to alter the financial needs of the defendant. "There is insufficient evidence before the court to draw such a conclusion."[1] This appeal followed.[2]

On appeal, the plaintiff primarily argues that the court applied the wrong legal standard in deciding his motion and should have found, on the basis of the evidence presented, that the defendant's financial needs were altered when she was living with her boyfriend simply because she paid less for rent and utilities in Bloomfield than what she had paid at the Sunfield Drive residence in South Windsor.

At the outset, I note the points on which the majority opinion and I appear to agree. Paragraph 12 of the separation agreement provided that the plaintiff would pay periodic alimony to the defendant in the amount of $400 per month until July, 2016, nonmodifiable as to amount and duration, and that the alimony would terminate on the earlier of the (a) death of the plaintiff, (b) death of the defendant, (c) remarriage of the defendant, or (d) cohabitation by the defendant *as defined by* § 46b-86 (b). Pursuant to the parties' agreement, permanent termination of the plaintiff's obligation to pay alimony is the sole remedy following a finding of cohabitation and the definition of cohabitation set forth in § 46b-86 (b) sets the standard for assessing whether cohabitation has occurred. See *Nation-Bailey* v. *Bailey*, 316 Conn. 182, 193, 112 A.3d 144 (2015) (parties' agreement reflects intent not to import remedial aspect of § 46b-86 [b]).[3]

Section 46b-86 (b) defines cohabitation as "living with another person under circumstances which the court finds should result in the . . . termination of alimony

because the living arrangements cause such a change in circumstances as to alter the financial needs of that party." Thus, in accordance with § 46b-86 (b), "a finding of cohabitation requires that (1) the alimony recipient was living with another person and (2) the living arrangement *caused* a change of circumstances so as to alter the financial needs of the alimony recipient." (Emphasis added.) *Fazio* v. *Fazio*, 162 Conn. App. 236, 240 n.1, 131 A.3d 1162, cert. denied, 320 Conn. 922, 132 A.3d 1095 (2016). As this court stated in *DiStefano* v. *DiStefano*, 67 Conn. App. 628, 633, 787 A.2d 675 (2002), "[b]ecause . . . living with another person *without financial benefit* did not establish sufficient reason to refashion an award of alimony . . . the legislature imposed the additional requirement that the party making the alimony payments prove that the living arrangement has resulted in a change in circumstances that alters the financial needs of alimony recipient." (Citation omitted; emphasis added; internal quotation marks omitted.)

The majority opinion and I also agree that, pursuant to § 46b-86 (b), the alteration of the financial needs of the alimony recipient caused by the new living arrangements "need not be substantial . . . [but] the difference must be measurable in some way. . . . [T]he court must have the ability to compare the plaintiff's financial needs at different points in time to determine whether those needs either have increased or have decreased over time." (Citations omitted.) *Blum* v. *Blum*, 109 Conn. App. 316, 324–25, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008).

It is at this point in the analysis, however, that the majority and I diverge. The majority appears to conclude that, so long as the alimony obligor demonstrates that the alimony recipient's expenses such as rent were reduced in a measurable way after moving in with another person, then the alimony obligor has established cohabitation as defined by § 46b-86 (b). The majority reasons that because the rental obligations of the defendant in this case may have been reduced by $840 per month when she moved into the new residence in Bloomfield and began living with her boyfriend, the plaintiff was not required to demonstrate that the person with whom the defendant was living (the cohabitator) made any financial contributions to paying the rent or to the new household in general.[4] I respectfully disagree with this conclusion.

First, it directly conflicts with established precedent. In *Blum* v. *Blum*, supra, 109 Conn. App. 319, the defendant sought to terminate or modify his alimony obligation because the plaintiff, his former wife, had begun living with Damian Donovan, the father of the plaintiff's fourth child, at a new residence that she had purchased out of the proceeds from the sale of the marital residence. In his motion to modify, the defendant alleged

that the plaintiff's new living arrangements "resulted in a change to her financial circumstances sufficient to justify a reduction or termination of the defendant's alimony obligations." Id. The trial court denied the motion, concluding that the defendant "failed to meet his burden *because he adduced no evidence as to the values of the contributions that Donovan made to the plaintiff's household* or the burdens that Donovan placed on the plaintiff's financial resources." (Emphasis added.) Id., 323.

This court subsequently affirmed the judgment of the trial court. In so doing, this court emphasized that "the defendant adduced no evidence as to the goods, services and resources provided . . . by Donovan." Id., 321. This court plainly stated: "Parties are not required to account for every penny that leaves the cohabitant's purse or elicit expert testimony as to the value conferred on the alimony recipient by every activity of the cohabitant. The party moving for a change in the court's alimony order, however, *must adduce some evidence from which the court could infer the value of the cohabitant's contributions.* . . . In this case, there was no evidence from which the court could have inferred the value of Donovan's contributions to, or demands on, the plaintiff's financial resources. *Accordingly, we conclude that the court properly construed § 46b-86 (b)* in denying the defendant's May 30, 2006 motion." (Emphasis added.) Id., 325–26. The trial court in the present case directly relied on this language from *Blum* in denying the motion to terminate alimony.

The majority, however, implicitly overrules *Blum* because it frees a party seeking to terminate or modify alimony from the obligation of demonstrating that the cohabitator contributed to the alteration in the financial needs of the alimony recipient. Thus, the decision by the majority contravenes the long-standing policy of this court "that one panel should not, on its own, [overrule] the ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.) *State* v. *White*, 127 Conn. App. 846, 858 n.11, 17 A.3d 72, cert. denied, 302 Conn. 911, 27 A.3d 371 (2011). Indeed, neither the majority opinion nor the plaintiff cite a single appellate case in which this court or our Supreme Court affirmed a trial court's termination or modification of alimony in the absence of evidence that the cohabitator made any contributions to the household of the alimony recipient that thereby resulted in the alteration of his or her financial needs.

Other appellate decisions, in analyzing the question of cohabitation, have relied on findings that the cohabitator made financial contributions after moving in with the alimony recipient. For example, in *Lehan* v. *Lehan*, 118 Conn. App. 685, 697–98, 985 A.2d 378 (2010), this court reversed the trial court's judgment modifying ali-

mony despite evidence that the recipient's overall expenses had been reduced during the period of cohabitation. In doing so, we emphasized the requirement that "[t]he party moving for a change in the court's alimony order . . . must adduce some evidence from which the court reasonably could infer the value of the *cohabitant's contributions*." (Emphasis in original; internal quotation marks omitted.) Id., 697; see also *Knapp* v. *Knapp*, 270 Conn. 815, 821–22, 856 A.2d 358 (2004) (noting that trial court found that even though alimony recipient and cohabitator already had been living together, cohabitation did not begin until cohabitator began to contribute financial support); *Lupien* v. *Lupien*, 192 Conn. 443, 444–45, 472 A.2d 18 (1984) (extensive discussion of facts showing cohabitator's financial contributions to alimony recipient's household); *Nation-Bailey* v. *Bailey*, 144 Conn. App. 319, 322, 74 A.3d 433 (2013) ("the plaintiff and her then fiancé . . . had cohabitated from December, 2007, through late March 2008, *with [her fiancé] sharing some of the plaintiff's living expenses during that period, thus altering her financial needs*"), aff'd, 316 Conn. 182, 112 A.3d 144 (2015); *Gervais* v. *Gervais*, 91 Conn. App. 840, 842, 882 A.2d 731 (court found that alimony recipient and cohabitator shared expenses and engaged in accountings to ensure that they were each paying their share of expenses), cert. denied, 276 Conn. 919, 888 A.2d 88 (2005); *Duhl* v. *Duhl*, 7 Conn. App. 92, 94–95, 507 A.2d 523 (finding of cohabitation supported by evidence that alimony recipient received rent from cohabitator), cert. denied, 200 Conn. 803, 509 A.2d 517 (1986).

Furthermore, I disagree with the majority that this court's recent decision in *Spencer* v. *Spencer*, 177 Conn. App. 504, 173 A.3d 1 (2017), cert. granted, 328 Conn. 903, 177 A.3d 565 (2018), supports its conclusion that a reduction in living expenses of the alimony recipient alone is sufficient to establish that the living arrangements have resulted in a change in circumstances that alters the financial needs of the alimony recipient. Indeed, if anything, *Spencer* reaffirms the importance of adducing evidence that the cohabitator is making financial contributions to the new household or the alimony recipient.

In *Spencer*, contrary to the suggestion of the majority, the defendant, the alimony obligor, demonstrated that the cohabitator was contributing financially to the new living arrangements with the plaintiff, the alimony recipient. Prior to moving in with her boyfriend in a rented single-family home, the plaintiff lived alone on the second floor of a two-family house where she paid $950 per month in rent. Id. 511. As this court specifically noted, "[r]egarding her living arrangement with her boyfriend, the plaintiff testified that *they share equally the cost of rent and utilities. Pursuant to that cost sharing arrangement*, the plaintiff pays only $375 per month in

rent." (Emphasis added.) Id. Indeed, the trial court in *Spencer* specifically predicated its conclusion that the defendant had established cohabitation on the basis of "two findings: (1) [t]he plaintiff has admitted that she began cohabiting with her boyfriend on or about October 1, 2013, and (2) as result of that cohabitation *and the contribution*[*s*] *of* [*her boyfriend*] *to the plaintiff's household expenses*, the plaintiff's financial needs have been altered." (Emphasis added; internal quotation marks omitted.) Id., 512.

Thus, *Spencer* is entirely consistent with *Blum* and other appellate cases in which cohabitation was established after the alimony obligor had met his or her burden to demonstrate that the cohabitator's financial contributions to the alimony recipient have altered the financial needs of the alimony recipient. In light of the previously quoted language from *Spencer*, I simply cannot read the decision, as the majority seems to do, as standing for the proposition that a reduction in rent is sufficient evidence, by itself, to establish that the alimony recipient's financial needs have altered because the alimony recipient is living with her boyfriend.

My second point of contention with the majority opinion is that the conclusion it reaches is contrary to the definition of cohabitation set forth in § 46b-86 (b) because it effectively eliminates the requirement contained in the plain language of the statute that a party seeking to avoid his or her alimony obligation must establish a causal nexus between the living arrangement and the change of circumstances that alters the alimony recipient's needs. The statute plainly states that alimony may be terminated when the party seeking termination establishes that the living arrangements, that is, living with another person, "*cause* such a change of circumstances as to alter the financial needs of that party." (Emphasis added.) General Statutes § 46b-86 (b).

A simple hypothetical will help to explain why I think that the majority's decision eliminates the causal nexus required by the statute. Consider a scenario in which an alimony recipient is living in a residence for which the rent is $2000 per month. In order to reduce her expenses, however, she chooses to move into a new, smaller residence where the rent is only $1200 per month. Several months later, another person moves into the new residence of the alimony recipient, but the cohabitator does not pay any of the rent or otherwise make any financial contributions to the alimony recipient.

Under these circumstances, the decision to cohabitate is not the cause of the alteration of the alimony recipient's financial needs. Instead, the financial needs of the alimony recipient have been altered because of his or her choice to live in a less expensive dwelling and not because he or she has chosen to cohabitate. In the present case, like in the hypothetical, the court

made no findings that the defendant's boyfriend contributed in any way to the household's costs for rent, utilities or other personal expenses.

As I understand the majority decision, the combination of the fact that the alimony recipient's expenses have been reduced with the fact that he or she is now living with a third party is sufficient to establish cohabitation pursuant to § 46b-86 (b) even though there is no evidence that the cohabitator has anything to do with the reduction of those expenses. Such a rule eliminates the causal nexus required by the plain language of the statute.

I do not mean to argue that the financial needs of the alimony recipient in my hypothetical are unaltered or unchanged, or that the alimony obligor is necessarily without a remedy. Because it is not the cohabitation itself, however, that has caused that change, the remedy for the alimony obligor in my hypothetical must be sought pursuant to § 46b-86 (a), which permits the trial court, unless otherwise precluded by the divorce decree itself, to terminate or modify alimony upon a showing of a "substantial change in the circumstances of either party . . . ." The lower standard of proof fashioned by the majority in this case has the effect of confounding the first two subsections of § 46b-86. See *Berry* v. *Berry*, 88 Conn. App. 674, 682–83, 870 A.2d 1161 (2005) (whether alimony should be modified pursuant to § 46b-86 [a] requires different legal analysis than modification pursuant to § 46b-86 [b]).

I also should note that the majority concludes that this case should be remanded to the trial court for a new hearing on the motion to terminate alimony. A new hearing, however, seemingly would be unnecessary under the majority's lower standard of proof because, on the basis of the factual findings by the trial court that the defendant's living expenses have been reduced during a period in which she was living with her boyfriend, no other facts would be necessary to entitle the plaintiff to a termination of alimony.

I do not mean to suggest that the trial court in this case was prohibited from inferring that the defendant was receiving financial support from her boyfriend based on the fact the defendant was paying less rent in Bloomfield after moving in with him than she had been paying in South Windsor. The trial court, however, chose not to draw this inference based on the lack of reliable evidence of financial support by the cohabitator or of what the total amount of rent was for the Bloomfield residence. Thus, in my view, this is simply an unremarkable case in which an experienced trial judge heard the evidence, applied the standard set out in *Blum* and other appellate decisions, and ultimately concluded that the plaintiff had not met his burden of persuasion to prove the nexus between the alteration in the defendant's financial needs and the fact that she was living

with her boyfriend. Instead, the majority's decision to reverse the judgment and implicitly overrule our precedent undoubtedly will surprise members of the bench and bar who have relied on those cases. If the majority believes those cases were incorrectly decided, then we should adhere to the rules regarding when they may be overruled.

I respectfully dissent.

[1] With respect to the period of time after the defendant moved from Bloomfield back to South Windsor, the court also found that "the record [was] devoid of reliable or probative evidence that the boyfriend contributes financial support to the defendant . . . ." The court therefore concluded that the evidence did not support a finding of cohabitation and declined to terminate the plaintiff's alimony obligation to the defendant. The plaintiff does not challenge on appeal this determination.

[2] The defendant did not file a brief in this court.

[3] In other words, the plaintiff does not seek to terminate alimony on the basis of § 46b-86 (b). Instead, the plaintiff seeks to terminate alimony on the basis of the parties' agreement, in which they simply rely on the statute as a means of defining "cohabitation." See General Statutes § 46b-86 (b) ("[i]n the event that a final judgment incorporates a provision of an agreement in which the parties agree to circumstances, other than as provided in this subsection, under which alimony will be modified, including suspension, reduction, or termination of alimony, the court shall enforce the provision of such agreement and enter orders in accordance therewith"); see also *Nation-Bailey* v. *Bailey*, supra, 316 Conn. 198.

[4] Footnote 3 of the majority opinion implies that the defendant's boyfriend also contributed to expenses related to the defendant's minor children while she was living at the Bloomfield residence by referring to testimony of the defendant that she did not do "major grocery shopping" during that time. The trial court, however, made no such finding in its memorandum of decision and, in fact, found that "[t]here was no reliable or persuasive evidence that the defendant's boyfriend paid any of her other personal or housing expenses."

---