# ELAINE OLSEN BAUGHER *v.* RICHARD SCOTT BAUGHER
## (AC 19436)
## (AC 20095)

Foti, Spear and Peters, Js.

Argued December 11, 2000—officially released April 24, 2001

*Lori Welch-Rubin*, with whom, on the brief, was *Jane K. Grossman*, for the appellant (plaintiff).

*Joseph T. O'Connor*, for the appellee (defendant).

*Opinion*

PETERS, J. In this family law case, a parent contests the modification of her custodial and visitation rights in one appeal and the findings following a motion for contempt in a second appeal. The present proceeding arises out of a New York judicial decree, rendered on February 26, 1998, that dissolved the marriage of the parties.[1] We conclude that the judgments of the trial court should be affirmed because none of the issues now raised warrants plenary review.

## CUSTODIAL AND VISITATION RIGHTS (AC 20095)

We first address the appeal that arises out of a June 10, 1999 order denying the motion of the plaintiff, Elaine Olsen Baugher, to modify visitation and granting the motion of the defendant, Richard Scott Baugher, to modify custody. In her appeal, the plaintiff claims that this order should be set aside on the ground of plain error. We disagree.

The gravamen of the plaintiff's appeal is that the court failed to take into account the consequences flowing from the New York decree dissolving her marriage. That decree awarded the plaintiff the sole legal and physical custody of the parties' four children.[2]

---

[1] When the New York court rendered final judgment, the ages of the four children were as follows: thirteen, eleven, nine and seven.

[2] Prior to 1996, the plaintiff, the defendant and the children all lived in New York. In January, 1996, however, prior to the New York Supreme Court's final judgment, the plaintiff moved, with her children, from New York to Connecticut. At about the same time, the defendant also moved to Connecticut.

The facts relevant to this issue are that the plaintiff, shortly after the dissolution of the parties' marriage, considered whether she and the children would relocate to California, where she would have the benefit of a better support network. The defendant learned of this possibility in March, 1998. There ensued a flurry of litigation in New York that ended when the New York court decided that, although it had continuing jurisdiction, it would decline to exercise that jurisdiction if the parties filed an appropriate action in Connecticut, where the parties were then residing or planning to reside.[3] Accordingly, in August, 1998, in this state, the plaintiff filed a motion for modification of visitation that would enable her to move to California with the children, and the defendant filed a motion for modification of custody so that he would become the children's sole or joint custodian.

The court conducted an evidentiary hearing on the parties' motions. All parties, including the children, were represented by counsel.[4] The court heard testimony given by a clinical psychologist, a family service counselor and a teacher. There is no claim that the court made any improper evidentiary rulings.

On the day of the evidentiary hearing, the court accepted a stipulation of procedure prepared by the parties. The stipulation stated that, pursuant to *Ireland* v. *Ireland*, 246 Conn. 413, 717 A.2d 676 (1998) (en banc), the plaintiff would bear the burden of proof to establish, by a preponderance of the evidence, that she had a legitimate purpose for her desire to relocate a child or the children. If that burden were satisfied, the defendant would then bear the burden of proving, by a preponderance of the evidence, that relocation would not be in

---

[3] In accordance with General Statutes § 46b-71, the New York decree was properly filed in this state.

[4] The minor children were also represented by a guardian ad litem.

the best interests of the children. Further, both parties agreed to waive their right to appeal on the issue of applicable law.

Accordingly, the court first inquired into whether the plaintiff had a legitimate purpose to relocate. The court found that she had satisfied her burden of proof on this issue. That finding is unchallenged on appeal.

The court then turned to the best interests of the children. It found that the defendant had proven that relocating the children to California would not, at the present time, be in their best interests. The plaintiff challenges the validity of that finding.

The court made the following subsidiary findings in support of its rulings. "The defendant's opposition to the children relocating with [the plaintiff] is found to be properly motivated. The defendant enjoys a close, loving relationship with the children and is involved in their lives. He exercises regular and frequent visits with them and spends time in their extracurricular activities. He desires to be continually involved in their daily lives. He is also motivated by his wish to accommodate their wanting to remain in Connecticut." The court further found that "it does not appear that their quality of life will improve any more than they currently enjoy." The court noted that both the defendant and the children would suffer if they were separated.

The court further elaborated on the reason for its decision. First, "[s]ome stability has been accomplished in the last three years. The children have a support system here through school, friends and relatives. This should not be disturbed at the present time without the showing of significant advantages for their moving. This has not occurred." Second, "[t]he current quality of life for children economically, emotionally and education-ally is excellent and difficult to improve on. In this area, there is no substantial benefit to making a change."

Third, "[t]he children wish to remain in Connecticut. They mistrust [the plaintiff] and blame her for trying to uproot them and take them away from [the defendant] and friends. This hostility toward the plaintiff, hopefully, will disappear in the future. The court concurs with [the opinion of the clinical psychologist] that it will be less difficult to resolve the hostile feelings toward the plaintiff if the children can remain in Connecticut." Finally, the court concluded that "[t]he recommendations of [the clinical psychologist], the guardian ad litem for the minor child . . . and the family services counselor all concur that the children should remain in Connecticut. Their reasons are logical, persuasive and have merit."

Having determined that moving the children would not be in their best interests, and characterizing the plaintiff's move to California as a substantial change in circumstances, the court concluded that a change in the children's custodial arrangements was warranted. Accordingly, the court granted the defendant's motion to modify custody and denied the plaintiff's motion to modify visitation.[5] The plaintiff appeals from the decision on both of these motions. She alleges that, for several reasons, the decision of the court constituted plain error.

I

The plaintiff first claims that the trial court committed plain error by not applying New York substantive law to the modification hearing.[6] This claim is untenable in light of the terms of the stipulation of procedure, which demonstrated the parties' agreement that Connecticut law would govern their disputes. Further, that agreement contained an express waiver of a right to

---

[5] The court did set forth, in its words, liberal and reasonable visitation rights for the plaintiff.

[6] Because the plaintiff did not raise this issue at trial, she asks this court to grant review because the trial court committed plain error.

appeal "on the issue of applicable law." The plaintiff has not challenged the validity of the stipulation, either at trial or here. Under these circumstances, the court's reliance on Connecticut law cannot be faulted.[7] In the absence of error, there cannot be plain error. See, e.g., *State* v. *Lindstrom*, 46 Conn. App. 810, 817, 702 A.2d 410 (discussing concept of plain error), cert. denied, 243 Conn. 947, 704 A.2d 802 (1997).

## II

The plaintiff's second claim is that the court committed plain error by refusing to assign significant weight to the plaintiff's status as the sole custodian of the children. It is not clear from the record whether this precise claim was ever presented to the court.

It is useful to clarify the precise contours of the argument advanced by the plaintiff. She does not argue that the court declined to consider her custodial status or refused to entertain any evidentiary proffer relating thereto. Instead, she argues that, as a matter of law, "parents with no custody rights have a higher burden in opposing a relocation, and parents with the bulk of custody rights have a lower burden in advocating a relocation." This is an interesting proposition, but it is not supported either by *Ireland* v. *Ireland*, supra, 246 Conn. 413, which the parties stipulated to be the governing law, or by other cases that she cites.

We are not persuaded that the court misapplied *Ireland* by declining to give as much weight to her custodial status as the plaintiff deemed appropriate. *Ireland* does not question a court's equitable jurisdiction to

---

[7] As the defendant notes, at trial the plaintiff offered no New York law. Her pleadings cited only Connecticut law. In the absence of a proper offer of evidence regarding the law of New York, the Connecticut court was entitled to presume that the governing law in the two states was identical. *Adamsen* v. *Adamsen*, 151 Conn. 172, 178, 195 A.2d 418 (1963). Finally, the plaintiff has failed to show how the application of any specific New York law would have advanced her arguments.

assure that custody orders reflect the best interests of the children. Furthermore, the plaintiff does not question the breadth of the court's equitable discretion in these matters. See, e.g., *Yontef* v. *Yontef*, 185 Conn. 275, 294, 440 A.2d 899 (1981).[8] The fact is, prior custodial arrangements will inform the exercise of equitable discretion, but they have never been held to be dispositive. Although the relocation of children may well be proper in some circumstances, the court is not required to approve such relocation in all cases. See *Raymond* v. *Raymond*, 165 Conn. 735, 741, 345 A.2d 48 (1974).[9]

Moreover, despite the plaintiff's advocacy of the relevance of New York law, the plaintiff has cited no New York case or statute that would require a court to issue such an order. On this record, we see no basis for finding an abuse of discretion by the court. See *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 541, 429 A.2d 801 (1980).[10]

III

The plaintiff's third claim[11] is that the court relied excessively on the desires of the parties' children in

[8] The reasons that underlay the court's custody decision equally underlie the court's decision of a substantial change in circumstances.

[9] The plaintiff cites a Pennsylvania case for the proposition that "[i]n terms of the best interests of the child the primary physical custody [parent] must be viewed as the family central and most important to the child's best interests." *Gruber* v. *Gruber*, 400 Pa. Super. 174, 182, 583 A.2d 434 (1990). Our Supreme Court in *Ireland* declined to follow *Gruber*, and, furthermore, *Raymond* is to the contrary.

[10] To the extent that the plaintiff's claim focuses on the court's failure to state the precise weight that it assigned to her custodial status, that alleged failure is unreviewable. "It is the appellant's burden to provide an adequate record for review. Practice Book [§ 60-5]. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." (Internal quotation marks omitted.) *State* v. *Collic*, 55 Conn. App. 196, 209, 738 A.2d 1133 (1999). The defendant did not file a motion for articulation. The record before us, therefore, provides no basis for us to disaffirm the trial court's decision.

[11] In addressing this claim, we intend to encompass the plaintiff's sixth and seventh assertions of impropriety.

deciding which parent should have custody.[12] This claim is undergirded by the assertion that the defendant improperly influenced the preferences expressed by the children. The plaintiff also asserts that the children's expressed desires might have been influenced improperly by the stressful facts of the dissolution of their parents' marriage and of their relocation to Connecticut.[13]

This claim, including its subtexts, does not differ from a claim that the court abused its discretion by finding some witnesses more credible than others.[14] "The weight given the evidence before it is within the sole

---

[12] General Statutes § 46b-56 (b) permits consideration of the desires of the children under appropriate circumstances. The plaintiff did not question the propriety of such an inquiry except with respect to the youngest child, who was only eight years old at that time.

In *Gennarini* v. *Gennarini*, 2 Conn. App. 132, 137, 477 A.2d 674 (1984), we stated: "[W]hether the child's preferences and feelings as to custody and visitation are a significant factor in the court's ultimate determination of the best interest of the child will necessarily depend on all the facts of the particular case, including the child's age and ability intelligently to form and express those preferences and feelings. . . .

"[E]ven when [information regarding the child's preferences] is elicited, [it] may be of questionable accuracy. A child caught up in the maelstrom of family strife may produce, to the psychologically untrained eye and ear, distorted and thus misleading images not only of the child's parents but of the child's own feelings . . . ." The plaintiff makes no claim that the court failed to observe the cautions stated in *Gennarini*.

[13] Again, the plaintiff had every opportunity to explore, at trial, to what extent stress was a basis for the statements made by the children, but did not.

[14] For example, the plaintiff asserts that the attorney for the children, the guardian ad litem, family services counselor Michael Hull and the court relied too heavily on the testimony of the child psychologist, even though that testimony allegedly lacked objectivity. The child psychologist acknowledged, however, that "the [defendant's] ability to influence the children . . . [was] relatively strong." The plaintiff seeks to devalue the child psychologist's recommendation of a custody award to the defendant because the child psychologist failed to require a showing of the extent to which the defendant had not only shown an interest in the children but also had demonstrated strong parenting abilities. She claims that the child psychologist failed to assign sufficient weight to her role as sole custodian of the children.

province of the trial court." *Dubicki* v. *Dubicki*, 186 Conn. 709, 713, 443 A.2d 1268 (1982). The plaintiff's allegation of error cannot be sustained in light of the holdings of countless cases that describe "the trial judge [as] the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." (Internal quotation marks omitted.) *Powers* v. *Olsen*, 252 Conn. 98, 105, 742 A.2d 799 (2000). We find neither plain error nor an abuse of discretion.

## IV

The plaintiff's final argument focuses on a claim of bias by the court. She makes two claims. First, she asserts that the conduct of the court in making a settlement proposal, after the close of the evidence but before final argument, warrants a finding of an appearance of impropriety. Second, she argues that the court's custodial orders, having been decreed only one year after she had assumed sole custodianship, demonstrates actual bias. In her view, in light of this showing of prejudice and bias, the judgment demonstrates plain error and must be set aside. We disagree.

With respect to the settlement proposal, the court, after noting the unhappy feelings of the parents and the children, suggested that the plaintiff relinquish her claims to relocate with the children for one year, at which point the court would reevaluate the situation and issue its final ruling. The court gave the parties a deadline by which to comment on its proposal. Neither party commented on, or *objected to*, the proposal. The proposal did not preclude further negotiations for alternate settlements.

The plaintiff contends that the settlement proposal created an appearance of impropriety because it demonstrated prejudice against the validity of the plaintiff's

relocation claim[15] at a time when the trial had not yet been concluded. Further, she contends that a trial court always risks an appearance of impropriety if it enters into settlement negotiations during the course of a trial. The difficulty with these contentions is that the plaintiff failed to file, at trial, a motion for disqualification or for mistrial. Our Supreme Court has held that claims of judicial impropriety are waived unless asserted at trial. *Knock* v. *Knock*, 224 Conn. 776, 792, 621 A.2d 267 (1993); *Gillis* v. *Gillis*, 214 Conn. 336, 343, 572 A.2d 323 (1990); *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982); *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 615–16, 236 A.2d 466 (1967).

It is true that, in *Cameron*, our Supreme Court undertook a plain error review of alleged judicial impropriety during the course of a trial. *Cameron* v. *Cameron*, supra, 187 Conn. 168. In that case, during the presentation of evidence, the court repeatedly expressed its belief that one of the parties was not telling the truth and was attempting to perpetrate a fraud on the court. Id., 170. Our Supreme Court held that those judicial statements were so inimical to the court's role as an instrument of justice that the court should have declared a mistrial sua sponte. Id., 171. These egregious statements are at a far remove from the inferences that the plaintiff would have us draw in this case.

We decline, therefore, to review the claim of an appearance of impropriety under the plain error doctrine. It cannot fairly be said that the court's suggestion, after it had heard all the evidence in the case, so clearly reflected a judicial statement or attitude that it denied the plaintiff a fair trial.

---

[15] We need not decide, in this case, whether a court's exercise of its equitable authority to deny a party's motion would suffice to demonstrate bias against the moving party. In this case, the plaintiff's argument focuses on the propriety of intimating such a denial in advance of final argument.

The plaintiff also asserts that the court's settlement proposal was an obstacle to further settlement negotiations between the parties in advance of the court's decision on the merits. This assertion is not supported by anything other than speculation. The defendant does not concede the existence of any such impediment. A bare assertion of prejudice does not demonstrate error. *State* v. *Mazzella,* 21 Conn. App. 431, 438, 574 A.2d 806, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990).

If we were to accept the validity of the plaintiff's alternate claim that the denial of her motion, in and of itself, demonstrates bias, litigation would never come to an end. Most, if not all, disappointed litigants no doubt believe that only a biased judge could fail to recognize the merits of their claims. Unless buttressed by some showing of trial court impropriety, an appeal on this ground cannot succeed. Under the circumstances of this case, there is no plain error.

In sum, having reviewed each of the plaintiff's claims that the court improperly denied her motion to modify visitation and granted the defendant's motion to modify custody, we conclude that the plaintiff cannot demonstrate either plain error or an abuse of discretion with respect to any of them. The judgment in appeal AC 20095 is affirmed.

## TUITION APPEAL (AC 19436)

We next address the appeal that arises out of a March 11, 1999 order denying the defendant's revised postjudgment motion for contempt.[16] The dissolution decree rendered in New York ordered and adjudged that, while the children continue to attend private school, the defendant would pay 60 percent of such tuition and the plaintiff would pay 40 percent, beginning with the 1997-

---

[16] The plaintiff appealed not from the order but from the findings contained in the order that she was responsible for her share of the private school tuition incurred.

1998 school year. In this appeal, the plaintiff contends that, without her consent, she should not be bound to pay any part of the fees charged at a new school in which the defendant had unilaterally enrolled the children. We disagree with this claim as well.

The New York judgment ordered and adjudged that "while the children continue to attend private school the Defendant will pay sixty (60%) percent of such tuition bills and the Plaintiff will pay forty (40%) percent of such tuition bills, beginning with the 1997-1998 school year . . . ." The plaintiff claims that the defendant improperly put an unwarranted tuition burden on her.

Concerned that the plaintiff was going to move to California with the children, the defendant secured a temporary injunction in June, 1998, precluding her from doing so. Thereafter, in a letter dated August 20, 1998, the plaintiff, as sole custodian of the children, advised the private school, Greenwich Country Day School, that "she did not plan to enroll any child in the school for the upcoming school year of 1998-1999." On September 2, 1998, the defendant filed a motion for an ex parte injunction, for permission to enroll the children in school in Greenwich and for counsel for the minor children. On September 3, 1998, the trial court, *Kavenewsky, J.,* ordered that the parties "shall have joint legal custody of [the] minor children and the [defendant] shall have physical custody and shall be permitted to enroll [the] children in Greenwich Country Day School and if no positions are available, the Greenwich Public School System. The [plaintiff] shall have such visitation as may be arranged through family services but under no event shall she remove the children from Connecticut. These orders are pendente lite and without prejudice to either party seeking modification. Motion for appointment of counsel for minor children denied with-

out prejudice at this time."[17] Pursuant to these orders, the defendant enrolled the children in Greenwich Country Day School.

On January 6, 1999, the defendant filed a motion for contempt requesting that the court find the plaintiff in contempt of the court's orders because the plaintiff failed to pay all of the 40 percent share that she was ordered to pay.[18] The court found that because two of the children were attending private school for the 1998-1999 school year, the condition of the judgment had been met, and the plaintiff was responsible for her share of the private school tuition incurred.[19] The plaintiff has appealed.

The plaintiff argues that the court improperly found her responsible for 40 percent of the private school tuition incurred because she did not consent to the children's enrollment. She argues that, as sole legal and physical custodian of the children, she alone had the authority to enroll, or unenroll, them in or from school.[20] We disagree.

This argument fails because at the time the defendant enrolled the children in Greenwich Country Day School,

[17] It is noteworthy that subsequent to this ex parte order, the court, *Kavenewsky, J.,* held a hearing in which it restored sole custody of the children to the plaintiff, yet affirmed its order that the children remain in Greenwich Country Day School.

[18] The orders were domesticated in Connecticut and enforceable pursuant to General Statutes § 46b-71.

[19] The court, however, did not find that the plaintiff was in contempt of the New York order because while she was sole custodian she had written a letter, dated August 20, 1998, advising the private school that she did not plan on enrolling the children for the upcoming school year. The court found that because she did not sign the school's contract, she had reason to await a judicial ruling as to whether she was obligated to pay, as alleged by the defendant.

[20] The plaintiff relies on *Cleveland* v. *Cleveland,* 161 Conn. 452, 454, 289 A.2d 909 (1971), in which a dissolution judgment made the husband's obligation to pay contingent on the wife's consulting with him in advance of incurring relevant expenses. In the present case, the ex parte order had no contingency. Therefore, *Cleveland* is of no avail to the plaintiff.

the court had ordered, pendente lite, that the plaintiff and defendant would have joint legal custody, with physical custody awarded to the defendant.[21] Without sole custody, the plaintiff's claim fails on its own terms.

At oral argument, the plaintiff modified her claim to focus on impropriety in the ex parte order because, at that time, she was in Connecticut and available to appear and be heard. In her view, in the absence of her consent to the order to enroll the children at Greenwich Country Day School, she was not financially responsible for their tuition.

With respect to this appeal, because this claim was raised for the first time during oral argument and, therefore, has not been properly briefed, we decline to consider it. See *In re Adelina G.*, 56 Conn. App. 40, 42, 740 A.2d 920 (1999); see also *State* v. *Wright*, 197 Conn. 588, 595, 500 A.2d 547 (1985).

The judgments are affirmed.

In this opinion the other judges concurred.

---

[21] Soon thereafter, the plaintiff was given the opportunity to be heard. At that hearing, she was given back custody of the children, yet the court ordered that she keep the children in Greenwich Country Day School.