# NAMI C. DOODY *v.* JAMES J. DOODY III
## (AC 26613)

Flynn, C. J., and McLachlan and Harper, Js.

Argued October 16, 2006—officially released February 13, 2007

*James J. Doody III*, pro se, the appellant (defendant).

*Steven R. Dembo*, with whom, on the brief, was *P. Jo Anne Burgh*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. The defendant, James J. Doody III, appeals from the judgment of the trial court denying his motion for modification of alimony and child support. On appeal, the defendant claims that the court improperly (1) found that he failed to meet his burden of establishing a substantial change in circumstances, (2) was prejudiced against him and (3) rendered its decision beyond the statutorily prescribed period of 120 days. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On August 2, 2002, the plaintiff filed a dissolution action. On September 29, 2003, the parties entered into a custody and parenting agreement, conferring legal custody of the parties' minor daughter jointly in both parties with primary physical custody to the plaintiff. Following an evidentiary hearing, the court, *Gruendel, J.*, issued a memorandum of decision on February 6, 2004, dissolving the parties' marriage, incorporating the parties' custody and parenting agreement and rendering various financial and property orders. Among other things, the court found that the defendant, through his consulting business, had a business contract to provide professional services, which yielded him $4000 per week. The court found that the defendant, an attorney with an

international practice,[1] had both gross annual earnings and an earning capacity of $192,000.

On February 23, 2004, the defendant filed a motion to reargue related to the court's division of the parties' assets and liabilities.[2] The court denied this motion on March 5, 2004. On March 10, 2004, the defendant filed a postjudgment motion for modification of alimony and child support seeking a modification on the basis of a claim of a substantial change in circumstances. In support of his motion for modification, the defendant argued that the contractual relationship, through which he was earning $4000 per week, had been terminated. As a result, the defendant argued, a substantial change in his financial circumstances had occurred, which warranted modification.

The court, *Prestley, J.*, held an evidentiary hearing on the defendant's motion for modification on November 29 and 30, 2004. At the hearing, the court heard testimony from each of the parties, and the parties introduced various exhibits, including bank records and other financial documents. The defendant also introduced documents related to his search for employment.

On May 17, 2005, the court issued a memorandum of decision, inter alia, denying the defendant's motion for modification.[3] The court found that it was unclear from

[1] The defendant had testified, inter alia, that he received a law degree in 1977, is a member of the bars of this state and the state of New York and holds a master's degree in business administration.

[2] The defendant did not challenge the court's finding of earning capacity but rather stated that the court's orders would require him to file for bankruptcy, which "carries with it the destruction of the defendant's earning capacity upon which the court's awards of child support and alimony are based . . . ."

[3] The court in its memorandum also found the defendant to be in contempt for his wilful violation of court orders by unilaterally reducing alimony and support payments and paying the mortgage directly to the lender rather than to the plaintiff. The defendant's claims on appeal, however, do not relate to the court's finding of contempt.

the testimony and exhibits that the defendant's income had declined significantly. Further, the court determined that even if the defendant's income had declined, the defendant had not been truthful with the court about his financial resources and had done little to restore whatever income he claimed had declined. Accordingly, the court found that the defendant's claim of a substantial change in circumstances was contrived and not plausible, warranting no modification. This appeal followed.

I

The defendant first claims that the court's determination that he failed to demonstrate a substantial change in circumstances was unsupported by the evidence.[4] The defendant contests most of the court's factual determinations, which were based on the evidence presented at the hearing on the motion for modification brought pursuant to General Statutes § 46b-86 (a).[5] In addition to the claimed factual inaccuracies, the defendant claims that the court lacked a basis to find his testimony not credible.

Before addressing the merits of these claims, we first set forth our well established standard of review applied

[4] The overarching theme of the defendant's appeal, as presented in his brief, is that the contractual relationship, through which he was earning $4000 per week, had been terminated, causing his earnings to diminish significantly. As the defendant states, "no evidence or testimony was elicited that would even imply that [the] defendant had any active earnings after [the date the contract ended]." The defendant, an attorney with an international practice, however, fails to address adequately how the court acted improperly in determining that he did not meet his burden of demonstrating that [the party's] earning *capacity* had diminished. See *Berry* v. *Berry*, 88 Conn. App. 674, 685, 870 A.2d 1161 (2005) ("loss of employment does not warrant alimony modification unless the moving party also proves that [the party's] earning capacity has changed substantially").

[5] General Statutes § 46b-86 (a) provides in relevant part that "any final order for the periodic payment of permanent alimony or support or an order for alimony . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . ."

in domestic relations matters. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Williams* v. *Williams*, 276 Conn. 491, 496–97, 886 A.2d 817 (2005). Thus, unless the trial court applied the wrong standard of law, its decision is accorded great deference because the trial court "is in an advantageous position to assess the personal factors so significant in domestic relations cases . . . ." (Internal quotation marks omitted.) *Berry* v. *Berry*, 88 Conn. App. 674, 677, 870 A.2d 1161 (2005); see also *O'Bymachow* v. *O'Bymachow*, 12 Conn. App. 113, 116, 529 A.2d 747 ("[g]reat weight is due the action of the trial court, which will not be disturbed unless the court has abused its discretion or its finding has no reasonable basis in the facts" [internal quotation marks omitted]), cert. denied, 205 Conn. 808, 532 A.2d 76 (1987).

With respect to the factual predicates for modification of an alimony award, our standard of review is clear. This court "may reject a factual finding if it is clearly erroneous, in that as a matter of law it is unsupported by the record, incorrect, or otherwise mistaken. . . . This court, of course, may not retry a case. . . . The factfinding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference

between the role of the trial court and an appellate court." (Internal quotation marks omitted.) *D'Ascanio* v. *D'Ascanio*, 237 Conn. 481, 487, 678 A.2d 469 (1996) (discussing standard under subsection [b] of § 46b-86). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Berry* v. *Berry*, supra, 88 Conn. App. 679.

The defendant first disputes the court's findings with respect to income derived from his contractual relationship with a company known as Mac Energy. In its decision, as an example of the defendant's efforts to establish additional sources of income, the court found that at the time of the hearing, the defendant had entered into a part-time contract with Mac Energy to provide professional services, with a $3000 retainer and $150 per hour payment for services rendered. The court found that the defendant's personal friend was the president. It further found that the defendant was a one-half to three-quarters owner of "this company" and that the remainder went into a trust for which the defendant was trustee and beneficiary.

Despite the defendant's claim that the court had no evidence on which it could have made such findings, at the hearing, the defendant testified with respect to this contract that "[Mac Energy] pay[s] me a retainer, which is $3000 a month, and then on an as requested basis I get paid a fee for services. I believe it's $150 an hour." The defendant also testified that he had an expectation that the first $3000 check would come to him in January, 2005. The defendant further testified that his personal friend, Bob McVeigh, was the president of Mac Energy. Accordingly, we conclude that the defendant's own testimony supports the court's factual

findings with respect to these issues, and, therefore, the court's findings were not clearly erroneous.

With respect to the court's finding that the defendant was a one-half to three-quarters owner of "this company" and that the remainder went into a trust in which the defendant was trustee and beneficiary, we are unable to find anything in the record to support this finding.[6] Nevertheless, the defendant failed to move for articulation of the court's order denying his motion to modify pursuant to Practice Book § 66-5[7] to allow the court the opportunity to address this issue. See *Grimm* v. *Grimm*, 276 Conn. 377, 389, 886 A.2d 391 (2005) ("[a]n articulation or rectification by the trial court would have, at the very least, aided the reviewing courts in determining the basis or lack thereof in the record for the trial court's decision, and also would have afforded the trial court, as the finder of fact, the opportunity to correct any miscalculations"), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). Moreover, assuming that this factual determination was incorrect, we fail to see how such an improper finding was not harmless in light of the ample other evidence on which the court relied. See *New Haven* v. *Tuchmann*, 93 Conn. App. 787, 795, 890 A.2d 664 ("Where . . . some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether

---

[6] At the hearing, the defendant testified that he had a 50 percent interest in certain rental property with the balance owned by a trust in which the defendant was the trustee. The defendant was cross-examined with respect to whether that ownership was in fact a three-quarter interest. It appears, therefore, that the court may have confused the defendant's ownership in the rental property with an ownership interest in Mac Energy.

[7] Practice Book § 66-5 provides in relevant part: "A motion seeking corrections in the transcript or the trial court record or seeking an articulation or further articulation of the decision of the trial court shall be called a motion for rectification or a motion for articulation, whichever is applicable. Any motion filed pursuant to this section shall state with particularity the relief sought. . . ."

they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's fact finding process, a new hearing is required." [Internal quotation marks omitted.]), cert. denied, 278 Conn. 903, 896 A.2d 104 (2006).

The defendant next disputes the court's finding that he encumbered a home equity line of credit on the parties' property when he wrote a check on March 15, 2004, for $2000. The defendant claims that he never wrote the check. At the hearing, however, the defendant testified that he *did not recall* whether he wrote such a check. He further testified that "it's very possible" that some funds were used and that the balance on the line of credit was higher than it was at the time of trial. Further, the plaintiff entered, as a full exhibit, a copy of a November 8, 2004 bank statement addressed to the defendant, which indicated under "Loan Detail Activity" an entry of activity in the amount of $2000 on March 15, 2004. Accordingly, we conclude that the evidence at the hearing supports the court's factual findings with respect to this issue, and, therefore, the court's finding was not clearly erroneous.

The defendant also disputes the court's finding that his testimony related to many of his claimed financial transactions was not credible. Specifically, the defendant disputes the court's assessment of his credibility as it relates to (1) his payments on a loan, (2) transactions involving the accounts of his family members and (3) lack of income derived from a rental property. With respect to the court's credibility determinations, "this court is compelled to state, what has become a tired refrain, [which is that] *we do not retry the facts or evaluate the credibility of witnesses.*" (Emphasis added.) *Bowman* v. *Williams*, 5 Conn. App. 235, 238, 497 A.2d 1015 (1985), appeal dismissed, 201 Conn. 366, 516 A.2d 1351 (1986). "*It is the sole province of the trial*

*court to weigh and interpret the evidence before it and to pass upon the credibility of witnesses.*" (Emphasis added; internal quotation marks omitted.) *W.* v. *W.*, 248 Conn. 487, 495, 728 A.2d 1076 (1999). Here, we find nothing in the record to undermine our confidence in the court's fact-finding process. Therefore, we defer to the trial court's sound judgment in making its observations of the demeanor and conduct of the witnesses, including the defendant.

Similarly, the defendant disputes the court's finding that he failed to list certain bank accounts on his financial affidavit. The defendant does not dispute that he failed to list such accounts per se; rather, he contends that certain accounts, which he failed to list, were established in his capacity as executor for the estates of his father and sister, as a joint account with his daughter, or used for estate purposes. As with other claims, the defendant seeks to have us retry the facts presented to the trial court and accord appropriate weight to his contentions. We are mindful that we must not conflate the roles of the trial court and an appellate court. Thus, it is not the province of this court to weigh and interpret the evidence presented at the hearing. See id. Accordingly, because we find nothing in the record to support the claim that the court was incorrect or mistaken, we defer to the trial court.

The defendant's next claim relates to the court's general statement in its decision that a defendant's inability to pay "does not automatically entitle a party to a decrease of an alimony order. . . . Such inability to pay must be excusable and not brought about by the defendant's own fault before a motion for modification may be granted." The defendant argues that the cases cited by the court for this legal proposition rely on outdated law that imposes an additional burden on a party seeking modification to demonstrate that the change in circumstances was uncontemplated. See

*Berry* v. *Berry*, supra, 88 Conn. App. 678 ("[p]ublic Acts 1987, No. 87-104, eliminated the requirement in § 46b-86 that modification of alimony or support be based on uncontemplated changes of circumstances"). The court's finding in support of its conclusion denying the motion for modification, however, was that the defendant had failed to meet his burden of demonstrating that his income had declined significantly, without regard to whether the change was contemplated or uncontemplated. In other words, the court simply found that the defendant failed to demonstrate a substantial change of circumstances. See *Gay* v. *Gay*, 70 Conn. App. 772, 776, 800 A.2d 1231 (2002) ("[t]he onus to prove the existence of a substantial change in the circumstances is on the party seeking modification"), aff'd in part, 266 Conn. 641, 835 A.2d 1 (2003). Whether the change was contemplated was irrelevant to the court's ultimate conclusion. We conclude, therefore, that this claim is without merit.

The defendant further claims that the court failed to articulate how his inability to pay was brought about by his own fault and argues that the facts demonstrate that he took sufficient steps to secure future employment. Such an argument, once again, begs this court to engage in weight and credibility determinations with respect to the evidence presented at the hearing in order to articulate the trial court's decision. As we have stated previously, it is not our province to retry the facts or to articulate or to clarify the court's decision. See *Hopfer* v. *Hopfer*, 59 Conn. App. 452, 458, 757 A.2d 673 (2000) ("[o]ur role as an appellate court is not to retry the facts of the case, substitute our judgment for that of the trial court, or articulate or clarify the trial court's decision" [internal quotation marks omitted]). Accordingly, we defer to the trial court.

The defendant also takes issue with the trial court's determination that he was aware that his contract

would not be renewed prior to the original February 6, 2004 memorandum of decision relating to the dissolution, yet failed to move to open the evidence at that time. In rendering judgment on the motion for modification, the court was required to compare the present overall circumstances of the parties with the circumstances existing at the time of the original award to determine if there had been substantial change. See *Berry* v. *Berry*, supra, 88 Conn. App. 685. We conclude, therefore, that it was not improper for the court to consider the defendant's awareness that his contract would not be renewed at the time of the original award in determining whether circumstances had changed when rendering its decision on the defendant's motion for modification.

## II

The defendant claims that the court was prejudiced against him in finding that his testimony was not credible. This bias claim relates to what the defendant contends were gross misrepresentations of fact by the trial judge. According to the defendant, the court engaged in a "pattern of misstatement and misrepresentation," which evinced the court's "clear intent to bury [the] [d]efendant beneath a pile of personal animosity, with facts twisted, contorted, even invented to support its foregone conclusion."

The plaintiff argues that we should decline to review this claim because it was not properly preserved. The plaintiff points out that the record is devoid of any assertion by the defendant that he sought to disqualify the trial judge pursuant to Practice Book § 1-23.[8] The

___

[8] Practice Book § 1-23 provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."

plaintiff contends further that the defendant's bias claim lacks merit.

Ordinarily, we will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court through a motion for disqualification or a motion for mistrial. *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982). Because an accusation of judicial bias or prejudice "strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary"; (internal quotation marks omitted) id.; however, we nonetheless have reviewed unpreserved claims of judicial bias under the plain error doctrine. See id. "Plain error exists only in truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Small* v. *Stop & Shop Cos.*, 42 Conn. App. 660, 663, 680 A.2d 344 (1996); see also *Cameron* v. *Cameron*, supra, 168; *Baugher* v. *Baugher*, 63 Conn. App. 59, 68, 774 A.2d 1089 (2001).

As discussed previously, we find nothing in the record to undermine our confidence in the court's fact-finding process, the alleged infirmity of which forms the linchpin of the defendant's bias claim. Moreover, the defendant has not cited any evidence that demonstrates the court's bias against him. It is clear, therefore, that the trial court did not commit plain error, and the defendant's unpreserved claim of bias cannot be reviewed.

## III

Finally, the defendant claims that the court lacked jurisdiction to render its decision on the motion for modification because the court did not render its decision until more than 120 days from the completion of

the hearing in violation of General Statutes § 51-183b.[9] We conclude that the defendant waived timeliness objections with respect to the release of the decision and that his claim, therefore, is without merit.[10]

As set forth in § 51-183b, the provisions of this section may be waived by the parties. "If the parties to an action fail to object seasonably to a late judgment, waiver may be implied." *Lawton* v. *Weiner*, 91 Conn. App. 698, 710, 882 A.2d 151 (2005). Here, as noted by the plaintiff, the record supports the conclusion that the defendant waived the time limit. Specifically, at the conclusion of the hearing on November 30, 2004, the court indicated that it would wait to hear from the parties before rendering its decision in light of ongoing negotiations related to the refinancing of the parties' home, without objection from the defendant. Further, after subsequent stipulations from the parties, on January 26, 2005, the court issued an order indicating that the decision would not be released until February 16, 2005, without objection from the defendant. Finally, on April 8, 2005, the parties stipulated that the effective date with respect to the

[9] General Statutes § 51-183b provides: "Any judge of the Superior Court and any judge trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

[10] Because we conclude that the defendant's actions resulted in a waiver, we need not address whether the hearing on the defendant's motion for modification constitutes a trial, thereby falling within the purview of General Statutes § 51-183b. See *Levine* v. *Levine*, 88 Conn. App. 795, 799, 871 A.2d 1034 (2005) ("No definition of what constitutes a trial is to be found in § 51-183b. . . . The New College Edition of the American Heritage Dictionary of the English Language [1983] defines a trial as: The examination of evidence and applicable law by a competent tribunal to determine the issue of specified charges or claims. . . . Black's Law Dictionary [7th Ed. 1999] defines trial as [a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding." [Citation omitted; internal quotation marks omitted.]).

timeliness of the court's decision was February 1, 2005, in light of a continuance.[11]

Thus, at no time before or after the decision was rendered did the defendant bring to the trial court's attention the alleged untimeliness of the court's decision. Not only did the defendant, until this appeal, fail to challenge the court's alleged untimeliness in rendering its decision, but he acquiesced in the court's delay at each juncture and affirmatively waived time limits on April 8, 2005.[12] Because the defendant failed to object seasonably and entered into a stipulation with respect to timeliness, thereby waiving the provisions of § 51-183b, we are unpersuaded that the trial court exceeded its jurisdiction.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] Specifically, the following discourse occurred at the April 8, 2005 hearing with respect to the effective date of the decision:

"The Court: I'm not even sure when the clock starts running on this decision now because it was a request that it be continued. . . .

"[The Defendant's Counsel]: Yes.

"The Court: . . . can I assume that that was to February 1 or to—

"[The Plaintiff's Counsel]: Yes.

"[The Defendant's Counsel]: Probably—

"[The Plaintiff's Counsel]: Probably to February 1.

"[The Defendant's Counsel]: . . . why don't we—*February 1, if that's convenient for Your Honor*—

"The Court: February, March and April. Well, that means my decision is due in about ten days. No—

"[The Defendant's Counsel]: Well—

"The Court: . . . actually a month and ten days.

"[The Defendant's Counsel]: *Or you—we can make it March, if you want.*

"[The Plaintiff's Counsel]: No, February 1.

"The Court: We'll—we'll do February 1.

"[The Defendant's Counsel]: *Fine.*

"The Court: Okay." (Emphasis added.)

[12] Despite the fact that the defendant appears pro se in this appeal, we hold him, as a member of the bar of this state, to a certain level of competence with respect to demonstrating an understanding of basic legal argument, including the import of the argument recited previously to lodge seasonable objections. As such, it stretches credulity to believe that he did not understand when the 120 day period started to run.